and we'll wait just a few minutes so that the first case has an opportunity to leave if it wishes to do so and the second case has an opportunity to get settled at the tables. All right, good morning, Mr. Murray. Whenever you're ready, you may proceed. Thank you very much. Good morning, Your Honor. Yes, my name is Michael Murray. I represent WBY, Inc., doing businesses, Follies. I've reserved three minutes of my time for rebuttal. Your Honors, for nearly three decades, 28 years, Follies was an extremely popular and successful adult nightclub in DeKalb County and then later in the City of Chamblee when in 2013 that city annexed land which included the property on which Follies was located. Follies' business model as an adult nightclub had three pillars. It offered new dancing to an audience, it served and sold alcohol, and it stayed open during the late night hours. On October 16, 2018, Chamblee adopted the two ordinances that are challenged here, 752 and 754. Those ordinances made all three of the critical components of Follies' business model illegal. They prohibited new dancing, they prohibited the sale and consumption of alcohol in an adult entertainment establishment, and they required adult businesses to close at midnight. Can I ask you sort of a hurdle question for me? I don't think, and maybe I misread the record, but I don't think that your client has challenged the food sale requirement ruling that was done by the, I guess by the administrative judge. Well, they did, but they failed. They failed, but you didn't appeal it afterwards. That's correct. Correct. But that doesn't stand in the way of relief here, because when the city rescued the bowling alley by passing Ordinance 782, they also amended the alcohol code to say that an applicant who has been finally denied a renewal of his liquor license can wait only three months, and after three months can reapply. And if the reason for the denial was the failure to meet the food requirement, all the applicant has to show after that three months is that during those three months, it did meet the food requirement. So the ordinance itself allows someone who's been denied on the ground that they didn't meet the food requirement. But counsel, your client hasn't done those things, right? I mean, your client's out of business. Why isn't it wholly speculative to base standing, at least with respect to the alcohol provisions, on the notion that at some point in time, your client might try to go back into business, might be able to show that it had at least half of its sales from food and non-alcoholic beverages, and might file for a permit? Why isn't that wholly speculative and not permitted under standing doctrine? Well, even if they couldn't get an injunction for purposes of reopening elsewhere, they're entitled to money damages. As of July 28th... I agree that they could be entitled to money damages, but with respect to injunctive and declaratory relief, as far as the alcohol provisions go, I mean, it doesn't seem like we can help you in any way, because you are subject to that ruling that you are not entitled to a license because you don't get more than 50% of your earnings from food and non-alcoholic beverages, and you're no longer in business. So it's wholly speculative to suggest that you might be subject to it again in the future. Had the laws been struck down as unconstitutional, and remember, the Alcohol Code prohibited any adult entertainment establishment from getting a license, so that was the main reason we were denied. It's true that they also threw in the food requirement, but it would be futile to litigate that until we got rid of the prohibition on adult entertainment. But it has two components, and so it's almost like a fatal redressability prong. You mean you have to meet both standards? The thing of the matter is... I don't see how you can meet both because you didn't appeal it. You lost on that point of the fact that your client didn't meet the threshold requirement for food sales, and I don't see how you can meet that. Why? Because a reapplication would demonstrate that, in fact, under their system, they do have 50% or more of their revenues in... But how's that going to happen when you're not in business? Well, I think the point is that we would have been in business had there been an injunction, and then we would have applied for our liquor license, and we would have met the 50% threshold. We would have demonstrated our ability to meet that threshold, as our witnesses testified as to how they would accomplish that. And Emmy Nietheimer agreed that we would be allowed to charge whatever high price we wanted for any food items, and that if we did charge high prices for our food items, that would count towards the 50%. So we would have met it. We would have demonstrated, had we not been hamstrung by an ordinance that prohibited us from getting a license because we were an adult entertainment business, we had the ability to show upon a renewal application after the three-month period that we would meet. And the other thing is, what's interesting about Ordinance 782 is, all you have to show is that during the preceding three months, you met the 50% requirement. Well, because you didn't have a license during those three months, you couldn't fail to meet the 50% requirement because you would have had no alcohol sales for those three months. So the way 782 is set up, if you wait the three months, not only would we have been able to demonstrate that under our system we would achieve more than the 50% Let me ask you something. Do you have a location that you have signed a lease for? No, right now the main issue is money damages. Okay, money damages, let's talk about that. Because I don't see how you, unless you want to further address the standing on the injunctive and declaratory relief, I just don't see how you get there on the alcohol stuff. That's not to say on the nude dancing and the late closing, those are different issues. Yes. But on the alcohol, I think you have a problem because of that ruling that you have not appealed and then the fact that your client's not in business at the moment. So you can spend your time however you want, but if you want to address the other two, feel free to do that. Yes, Your Honor, and again, I think that the key to that problem is the three-month rule and the ability to go back notwithstanding. Whatever happened in the past doesn't count when you go back. The only thing that counts is showing that you didn't fail to meet the requirement during those three months. Let me just ask you one other question about that. Do you have anything at all pending right now? No. Just our appeal from the grant of summary judgment, which if we get a reversal, we would be entitled to a jury trial. If the laws are struck down as unconstitutional, we would be entitled to a jury trial on the issue of damages. And the damages are substantial because this was a very successful, profitable business, and it was effectively closed as a result of these ordinances. And the damage would be proven to be quite large. But all we need is some damage in order to have standing to raise the constitutional issues on this appeal. I agree that you have standing with respect to the damages. My concern goes to injunctive and declaratory relief. Yes, Your Honor, and I understand that. And it is true we do not have a lease anywhere in the city. So I think, though, the court would— Although I do think you still have problems with respect to the fact that you didn't challenge the— I mean, you didn't challenge the food and beverage ruling, right? Because we—the reason we didn't— So let me just say why I think that's a problem. Because you didn't file the food and beverage ruling, then you— it seems like you would have problems with respect to the damages as well for that period. Well, that would go to the amount of the damages, if that were correct, not whether we were entitled to any damages. But, Your Honor, the reason that we are not actually challenging the 50 percent requirement is because we can meet it. And because we would have met it had the law been struck down that prohibited us from even getting a liquor license if we did meet the food requirement. And I think that's the fact that is the most crucial one here. Nothing was res judicata about the denial of the renewal based on— Well, let me ask you that because my understanding is that there's a case that we have called Travers v. Jones that says under Georgia law, once an administrative body rules on questions of fact, the questions of fact are thereafter precluded from re-litigation. And my understanding is that the finding that was made was that you— your client did not meet the 50 percent threshold for the sale of food. Fine, but that only applies to at the point at which that application for renewal was submitted. So we have to defer to that. It says nothing about what happens in the future. It doesn't preclude us from meeting the 50 percent requirement in the future when after three months— But why isn't it appropriate for you to come back to us in the future after you've met the requirement and have been denied? I mean, the problem is right now you don't have— It's completely speculative that you will ever have a problem with this again in the future because you don't have a business. You haven't sought a lease. You haven't sought a permit. You haven't done any of these things, and you haven't told us about any plans that are imminent for you to do so. And so it's wholly speculative, and we can't make determinations of standing based on speculation. That's the problem that we have. Except that I think Your Honor agreed with me that we can get money damages. Yes, I agree. Money damages. And that's all we need to establish our standing to challenge the constitutionality of these two ordinances is money damages as a result of the enforcement of these two ordinances that shut down a profitable and successful business. Let's talk about that because they did—at some point in time the pandemic happened, and the state of Georgia had—there was a closure of the business that was based not on what the county did but what the state did. And then afterwards, I guess as a result of the pandemic, your client closed because I guess people were not going out to adult entertainment places or venues. Well, there was an order closing businesses in March of 2020 because of the pandemic. It was July of 2020 when the order was lifted that would permit live entertainment venues to open under certain limited circumstances. And so the period you're seeking the damages for is from July 2020 until December 2021, right? For the contract claim. Yes. For the First Amendment claim, it would be damages that would be even beyond that time period. How could it be beyond when it was—how could it be beyond when your client chose to close? We were forced to close. The state court issued an injunction enforcing the ordinances, and the client could not operate under those ordinances because it destroyed his entire business model, its entire business model. And so it was out of business as a result of the enforcement of those ordinances that eliminated all the ingredients of an adult entertainment club in the city of Chambly knowingly. The city did that knowing that it would result because it had resulted in Sandy Springs and the closure of the three adult nightclubs there when that ordinance, after which our ordinances were patterned, had done so. I think I might be invading my rebuttal time. You are, but I'll give you full rebuttal time. We asked you a lot of questions. Thank you so much, Your Honor. Thank you, counsel. Mr. Berktold. Good morning, Your Honors. May it please the Court. This case has a fatal regressibility problem that requires that the appeal be dismissed. Not in its entirety. In its entirety. And here's why, Your Honor. They applied for an alcohol license in 2019. It was denied for several reasons, including the fact that they did not meet the 50% food sales threshold. Mr. Murray says that their client testified about ways they could have met that. Well, that testimony came in May of 2019 before the Federal District Court during the preliminary injunction hearing. That same month, there was a hearing in which Follies was denied an alcohol license for failure to meet the 50% food rule, among other reasons. When they came back in 2020, they never even applied for a license all the way through the year until March when the pandemic hit. Now, mind you, that until they closed under the COVID order in March of 2020, they operated full bore. They didn't abide by any portion of the ordinances. Full nudity, liquor, full hours, and all of that, Your Honor. And then when they were closed on March 21st, 2020 from the COVID order, they were hoping to get back open in July when Governor Kemp lifted the COVID order. However, on June 29th, 2020, the state court held a hearing on the motion for interlocutory injunction. And there's some confusion, some wrong dates in the appellant's brief that says the state court's order came about on July 28th, 2020. That's not true. He actually orally announced that he was graining an injunction because they didn't have a business license, they didn't have an alcohol license, and they hadn't even applied for one at all in 2020. He said, you're not even making an effort to preserve your rights. In fact, this is, Your Honor, in the record at 126-1, at the end of the decision or the end of the transcript, page 53 of that transcript, Mr. Wiggins, Follies counsel said, if you were to enter an order that prohibited Follies from selling alcohol, it would terminate the business. It would never recover. That would be the end of it. And I don't know what that does to my ability to proceed in the federal case. So your argument is, even though, even though the, let's use his analogy, right, the three-legged stool, even though the midnight closing and the lack of, and the prohibition on nude dancing may have contributed to his problems, it doesn't matter because, in any case, he conceded that he can't be open without the alcohol. Well, that's one reason. He tried to, they said that very clearly at multiple points throughout the trial court proceedings and in the state court. Then on appeal they say, no, it's not, you know, alcohol is not the sine qua non of our business. But they did say that at multiple places. But even so, I mean, I think you can, I think you can separate out their First Amendment claim, for example, on nude dancing, the prohibition on nude dancing. And I think, I think there's, I think that there is standing for at least part of this claim. And maybe you want to address for me why you think there isn't with respect to the challenge to the parts of this that deal with the midnight closing and the nude dancing. I'm not saying whether they're necessarily winning claims. But I think there's standing for them and the, you know, the equal protection. Yes, Your Honor. I'll tell you very clearly why. The state court injunction enforcing the ordinances was not the only thing that precluded Follies from operating a business. There were two things that independently, and those two things are not challenged here. There were laws that were not challenged here that precluded them from operating any business in the city of Chamblee. Number one was the Occupation Tax Code. They had to have a general business license. As of the injunction hearing in the state court at the end of June 2020, they hadn't applied for one. Later in the year, they did apply for one, and they were denied on six separate grounds under the Occupation Tax Code, the business licensing code. And that's not challenged here. So under KAH Outdoor and other cases from this circuit, that's a fatal redressability problem because they do not challenge a law that precluded their business from operating at all. So they couldn't have been incurring damages because they couldn't have legally operated without a business license. They were denied that on October 1, 2020, after the hearing officer's decision came out, and they did not appeal that or otherwise challenge the law that was applied in that proceeding. What about the period between July 2020 and October 2020? Yes. From July 1, let's say, of 2020 until December 31, 2021, or to the present, it doesn't matter. They did not have a business license. Okay. I'm asking a different question. Oh, I'm sorry. That's okay. July 2020 is when the order is entered and they are closed, right? We, of course, have to give effect. Well, the order is entered about that. I mean, they're closed before that. But the order is entered with respect to the food and beverage sales. July 2020. Orderly announced June 29, entered July 8. Yes. Okay. October 1 is when you have said, or October of 2020, is when you've said that the occupation license is denied. It was denied in September or so, and the hearing was October 1 by the independent hearing officer. Okay. So, is there a period between July and when the occupation or business license was denied that there might be standing for under your analysis? No, because they didn't have a business license. They weren't lawful to do any business in the city of Chamblee during that period. You have to have a business license to do business in the city. They hadn't applied either. They hadn't applied until, like, late August or early September, I think. And then the hearing, they were denied, and the hearing was held on October 1. But they couldn't operate for that independent reason that's not challenged here all the way throughout. Then, secondly, Your Honor, the sine qua non of their business by multiple aspects of testimony in the district court is the alcohol license. They also did not have the alcohol license. They didn't apply for it until late summer. It was denied. They went before an independent hearing officer. October 1, that hearing officer affirmed. And, again, they did not challenge that by way of certiorari or in the federal court. And when they didn't challenge the alcohol sales food rule, the rule that you have to have 50 percent of your alcohol or your total revenue from food and non-alcoholic beverages, they lost on that issue in the district court. They made a racial discrimination claim against the 50 percent rule that was unfounded. And then they didn't appeal it here. So what you have is you have a business that has no standing for declaratory and injunctive relief because they're out of business, they don't have a location, they've never applied for anything, they don't have anything pending, and they don't have standing for their damages claim because there was an independent set of laws, both the occupation and general business tax code and the alcohol food sales rule that are not challenged in this proceeding that barred them from operating the business. Because the injury they had was, we want to operate a business with nudity and alcohol. And those two unchallenged laws precluded those things. Where can we find in the record the information about the lack of an occupation or a business license and the denial of it in October of 2020? Yes, that is the alcohol license denial is at Record Entry 119-4. The occupation tax certificate denial is at Record Entry 127-3. Can I ask you something? Where did you argue this? I mean, it's jurisdictional, so it doesn't really matter, but just from my own, where is this argued? We argued it, we argued obviously the alcohol food sales rule throughout our brief. That part I understand. I'm asking about the occupation tax in the business. We also argued it at page 30 of our brief. If you look at our footnote, it said, look, they also didn't have an occupation tax certificate. And this is another reason why they failed to redress the building problems, because they wouldn't be able to get damages for that. What's the footnote number? What's that? The footnote number that you made this argument in. Again, Follies was also denied an occupation tax certificate, quote, a general business license for many reasons, R-127-2, R-127-3, which is the hearing officer's decision. It has not challenged that ordinance or the denial. This is yet another reason why a ruling here will not redress Follies' grievances. Again, the injury is not being able to operate a new dancing business with alcohol, but they couldn't operate any business and they couldn't operate anything with alcohol because they never met the food sales rule. So all this promising about future, we could do this, and the three-month rule. Well, Ordinance 782 was in effect in April of 2020, and they came along at the end of August of 2020, and the hearing officer still said you don't meet the food sales rule, in part because of what Judge Bray said at Record Entry 52 in the preliminary injunction hearing, which is in the preliminary injunction ruling, and that was you're basically money laundering. You're basically selling an alcohol item and supposedly passing along a cracker as part of the scheme. So this 30 years of profitability, there were 30 years of illegal operation because they falsified their food sales by claiming that when we give someone a pack of Tom's Crackers with a martini on the rocks, we can charge 80% of that sale based on the cracker the customer didn't ask for and say that we have 80% of our sales in food. And the district court properly noted that when we analyzed the numbers from their accountant, and they literally kept two sets of books in the same spreadsheet, and the actual books of their actual food sales based on cost of goods sold and so forth showed that they had no more than 9% of their total revenue in food. So they had multiple opportunities to do this thing after May of 2019 where they said we can meet the food sales requirement. They said that way back in 19. But they were denied in 19, and they didn't challenge it. They were denied in 2020, and they didn't challenge that. This case has no justiciability for those reasons. Your Honor, as to the rest of the matters, I don't know that it's necessary to get into them. They basically amount to please overturn all the cases in this circuit that deal with these types of regulations. Say that anything that impacts economics means that the ordinance is unconstitutional. If a law that regulates something like a non-protected alcohol conduct decreases the profitability of us selling, you know, having new dancing because we can't sell a beer for $12 or whatever. But that would just upend everything in the case law. And I think the— And so your position is not only is there not standing on the injunctive and declaratory relief, but even construing the complaint broadly, even though it doesn't specifically ask for damages. There's not standing for damages, and why is that? Because basically they ignored the laws all the way through July of 2020. The claim period of damages starts from July of 2020 forward. The business is closed forever. And from July of 2024, they never have any kind of general business license. They did not have an occupation tax certificate that would allow them to operate any business in the city of Chamblee. Therefore, they have a fatal redressability defect on that prong. Separately from that, they have a fatal redressability problem because the only business they ever said they wanted to operate was an alcohol business, and they never met the food sales rule from 2019 to the present. So when that happened in July of 2020, it was just cumulative. There were two other independent laws that are not challenged. You're saying that they can't get damages because they can't show that the reason that they couldn't operate was because of any of the statutes that they challenged, since they didn't have a license in any case. Right. And it's like KH outdoor, right? So that's a case where they want to erect billboards. The county denies billboard permits on size and height requirements. It gets to summary judgment, and the district court says, well, look, there's these Florida DOT construction drawing requirements, and you had to submit an application with a licensed engineer from Clay County in the KH outdoor case from 2007, and you didn't do that, and so this appeal is dismissed. I mean, there's no standing here. The declaratory and injunctive relief claims are moot, but more importantly, there's no standing at all for any part of the case because these unchallenged laws preclude your business. You would have suffered the same injury of not being able to operate a business in Chamblee with alcohol under these laws that are not challenged, and for those reasons, and frankly for the well-reasoned reasons, the well-reasoned opinion of the district court on the merits, we ask that this court dismiss the appeal for want of jurisdiction or any alternative to affirm on the merits for the reasons given below. Quick question before you sit down. It seems like this business license, occupational license argument is a very strong one in your favor. Why relegate it to a footnote? It's footnote 10 on page 30, like you said. Your Honor, because of what they said about the essence of alcohol being the central part of their business, it was somewhat cumulative. It was an additional reason, and I apologize. I should have made that more prominent. That's okay. It's not entirely cumulative, though, because it addresses the period from July 2020 until December 2021, and that's why it's not entirely cumulative, and the alcohol license alone does not. I mean, we don't have to argue about it, but that's why it's not entirely cumulative. Agreed, Your Honor, and just one other point that I want to make clear. There is nothing in the state court injunction that precludes them from operating any business. They could have—all it said was don't sell alcohol without a license and comply with these aspects of the Adult Entertainment Code, but they were grandfathered as to location. They could operate in that location indefinitely doing erotic dancing, but they just have to comply with the alcohol licensing rules, so the idea that the state court injunction made them close down is false. It only required them to comply with other generally applicable ordinances, including the business licensing requirement that's not challenged and the alcohol licensing requirement if they wanted to sell alcohol. They never wanted to do any business without alcohol, but they didn't qualify under food sales ever. Thank you. Thank you, counsel. All right, Mr. Murray, you have three minutes. Thank you very much, Your Honor. First of all, count 12 of our amended complaint is specifically a damage claim, and it asks for compensatory damages for all of the constitutional violations, so it's clearly in the complaint. Your Honor, this, it seems to me, is a textbook example now of how a city can basically suppress all adult entertainment within its jurisdiction. But here's the problem. You did not appeal the denial of the occupation license. That's what he's saying. Is that accurate? The occupational tax license is for tax collection purposes. I think it was denied because of the fact that they are not allowed to operate a business with an alcohol license in adult entertainment. I understand, but did you? There was no appeal. There was no appeal that could succeed on that ground. But the problem is because that's in place and you didn't challenge it, it doesn't matter whether we grant you all of the relief you're seeking, right, because you still didn't have an occupational license during that period, and so you can't get damages for that because the cause of your not being able to make money between July 2020 and December 2021 is not having an occupational license. But, Your Honor, it's because these ordinances, they claimed, didn't allow us to have an occupational license. If you take out the ordinances, we'd have the occupational license. I understand what you're saying, but there's no, you didn't challenge that in any way, did you? We've challenged it in federal court by saying that these ordinances, which led to all of this stuff. No, no, no, you did not, you did not. Did you, after the ruling came down from the administrative body, did you file another appeal? No, it was futile because as long as they— Okay, but again, it may have been futile, but then you didn't preserve your rights. And so once you don't have an occupational license, then you can't run a business. But if you have an appeal, then you can at least argue that you are still preserving your rights. I think that we preserved our rights by claiming from day one that these ordinances were designed to put us out of business because they don't like adult entertainment. It was designed to deprive us of our First Amendment rights, deprive us of our rights under Article I, Section 10, and it succeeded because as side issues, then they said, oh, by the way, you don't meet the food requirements. Even though if you did, we wouldn't give you an alcohol license because you're in adult entertainment. Oh, we're not going to give you an occupational tax license because you don't meet the food requirement and because adult entertainment is not permitted with alcohol, and therefore you don't have a legal business. It all goes back to these ordinances. If these ordinances are unconstitutional as we maintain, then everything flows from that and they no longer have a basis for claiming that we're not entitled to an occupational license and if we can meet the 50% threshold, they would have no longer any basis for saying we couldn't have had a liquor license. It cannot be separated from what they did. Let me just ask you something. Your position is the reason that you were denied the occupational license is specifically what? I believe, again, because you can't have an alcohol-serving adult entertainment club because of these ordinances, and you can't meet the food requirements because of these ordinances, I believe were the main grounds. But I wasn't there. Mr. Wiggins handled that, and so I can't speak authoritatively, but I believe that the basis— Is it in the record why you were denied the occupational license? I don't know whether that document— I think it must be that Mr. Berthold— 119.4 and 127.3? Yes. Okay. And 127.6. All right. I'll give you another 30 seconds because I ate into your last few seconds there. None of those issues stand in the way of our being entitled to pursue money damages. All of that, all of those sideshows might go to the merits of how much we can recover or whether when we get to the trial on the issue of damages, certain limitations can be imposed on jury instructions, for example, as to what could be recovered. But if these ordinances are struck down, either in part or in whole, we have an entitlement to recover some damages, and that gives us standing and makes the case live to require a ruling on the merits of the constitutional issues under both the First Amendment and Article I, Section 10, Your Honor. Thank you, counsel. Thank you so much. All right. Our next case is Vision Warriors Church, Inc. v. Harry Johnston.